UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**JASON HURON, individually, R.H., BY AND THROUGH HIS NEXT FRIEND TRACY MYERS, and LEE MYERS, individually,**

  *Plaintiffs*,

v.　　　　　　　　　　　　　　　　　Case No. SA-25-CV-00230-JKP

**NATALIA INDEPENDENT SCHOOL DISTRICT,**

  *Defendant*.

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Natalia Independent School District's (NISD) Motion to Dismiss for Failure to State a Claim, as well as the Court's requested briefing on the issue of exhaustion of administrative remedies. *ECF Nos. 10,28*. Plaintiffs (the Huron Plaintiffs) responded to both. *ECF Nos. 21,32*. Upon consideration, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

### UNDISPUTED FACTUAL BACKGROUND

Jason Huron and his brother, R.H., are students at the Natalia Independent School District. Jason was eighteen years old and R.H was fifteen years' old at the time this suit was filed. NISD recognizes Jason has the disabilities of dyslexia, dysgraphia, anxiety, adjustment disorder, and Attention Deficit Hyperactivity Disorder ("ADHD"). NISD recognizes R.H. has the disabilities of ADHD, anxiety, and scoliosis. Accordingly, NISD developed individual plans under Sec-

tion 504 of the Rehabilitation Act of 1973 ("504 Plan") to address Jason's disabilities and R.H.'s disabilities. Jason's 504 Plan requires accommodations to be provided in each of Jason's subjects to include: clearly defined assignment directions and due dates, not counting off for misspelled words or punctuation, provision of class notes, allowing the use of a laptop, one extra day to complete assignments and extra time to complete tests, organizational strategies and task reminders, reporting to the office to calm down, and spelling assistance. *ECF No. 2-2, pp. 4-5*. Jason's 504 Plan does not provide for an accommodation of homebound instruction, nor was this accommodation requested. *Id*. R.H.'s 504 Plan requires he be provided preferential seating, reminders to utilize organizational materials and to stay on task, one extra day to complete assignments and extra time to complete tests, including the STAAR exams, and use of a locker so he did not have to carry books. *ECF No. 2-3, pp. 1-3*. R.H.'s 504 Plan does not provide for an accommodation of homebound instruction, nor was this accommodation requested. *Id*. The Huron Plaintiffs admit neither Jason nor R.H. qualify for homebound instruction.

In the Original Complaint, the Huron Plaintiffs allege NISD failed to comply with Jason's and R.H.'s 504 Plans. The Huron Plaintiffs allege NISD intentionally exacerbated Jason's and R.H's disabilities through harassing and humiliating comments of teachers and employees which triggered and intensified their anxieties. The Huron Plaintiffs allege when Jason and R.H.'s mother, Tracy Myers, advocated for them, NISD administrators and staff retaliated against the family members and Tracy, creating a toxic environment. As a result, the Huron Plaintiffs allege Jason and R.H. were forced to leave the classroom environment and complete their studies at home. The Huron Plaintiffs allege NISD retaliated against Lee Myers for his association with Jason, R.H., and Tracy Myers by terminating him from his position with NISD.

In this litigation the Huron Plaintiffs seek injunctive relief, only, enjoining NISD and any administrators, teachers, or staff from declining to follow Jason's and R.H.'s 504 Plans and enjoining NISD employees from retaliating against Jason and R.H. and/or their parents based on their efforts to protect their rights. *ECF No. 1, pp. 9-10*. The Huron Plaintiffs request this Court enjoin NISD from continuing to fail to train its administrators, teachers, and staff to implement the 504 Plans and the accommodations included in the 504 Plans. The Huron Plaintiffs request this Court enjoin NISD from refusing to provide Jason and R.H. instruction and services in the home until such time as they are able to return to school. Finally, the Huron Plaintiffs seek injunctive relief requiring reinstatement of Lee Myers to his employment with NISD. *Id*.

## LEGAL STANDARD

To provide opposing parties fair notice of what the asserted claim is and the grounds upon which it rests, every pleading must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Motion to Dismiss filed pursuant to Federal Rule 12(b)(6), the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *See id.*; *see also Twombly*, 550 U.S. at 563 n.8. Thus, to qualify for dismissal under Federal Rule 12(b)(6), a Complaint must, on its face, show a bar to relief. Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir. 1986). Dismissal "can be based either on

a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.,* 9 F. Supp.2d 734, 737–38 (S.D.Tex. 1998).

In assessing a Motion to Dismiss under Federal Rule 12(b)(6), the Court's review is limited to the Complaint and any documents attached to the Motion to Dismiss referred to in the Complaint and central to the plaintiff's claims. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)(quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

## DISCUSSION

### 1. Jason Huron

#### a. Mootness

On June 5, 2025, this Court held a hearing on Jason's Motion for Temporary Restraining Order in which Jason requested this Court enjoin NISD from refusing to allow him to graduate on June 6, 2025. Jason argued he qualified to graduate based upon his satisfaction of academic credits, alone. *ECF No. 13*. NISD argued Jason did not qualify to graduate because his 504 Plan does not provide for in-home instruction, and Jason had not satisfied the state-mandated, in-class hours requirement for graduation. At the hearing, Jason declined all of NISD's offers to satisfy this in-class hours requirement by an alternate method. For this reason, and because this Court has no authority or basis to require NISD provide in home instruction when Jason, admittedly, does not qualify for this service, the Court denied the TRO. *ECF No. 25*. To this date, the Court presumes Jason did not satisfy the required in-class hours, did not graduate, and will not receive his diploma from Natalia High School. Based upon this presumption, this Court must examine

whether Jason's case is now moot given that the time for completion of Jason's graduation requirements is passed.

A case becomes moot when (1) there is no reasonable expectation the alleged violation will recur, and (2) interim relief or events completely and irrevocably eradicated the effects of the alleged violation. When both conditions are satisfied, neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law, and therefore, the case is moot. *County of Los Angeles v. Davis,* 440 U.S. 625, 631 (1979). In addition, if a Court can no longer grant any requested injunctive relief, or if the Plaintiff will not benefit from a favorable ruling on any requested injunctive relief, then the requests for injunctive relief are moot. *DeFunis v. Odegaard,* 416 U.S. 312, 316, 319–20; *Sapp v. Renfroe,* 511 F.2d 172, 175 (5th Cir. 1975).

The date of Jason's graduation passed. If the case were to continue because Jason wants to obtain his diploma from NISD, and if that opportunity is still available, the parties represented to the Court at the hearing on Jason's Motion for a Temporary Restraining Order that the only requirement for Jason to obtain his diploma is that he satisfy his remaining 48 hours of state-mandated, in-class hours of instruction. Jason represented to the Court at the TRO hearing that he would not agree to NISD's accommodation compromise offer to allow Jason to complete his remaining 48 hours of in-class hours in a private classroom during the summer months or at an offsite location. The briefing and arguments of the parties at the TRO hearing did not indicate with certainty whether Jason may still satisfy the in-class hours requirement after the time of graduation and receive his diploma late upon his satisfaction of this mandatory, in-class hours requirement.

All of Jason's requests for injunctive relief, except the request for in-home instruction, implicate his status as an NISD student and his presence on an NISD campus, and as stated, Jason will not complete his required in-class hours in a private classroom or at an offsite location. Therefore, this Court cannot provide any requested injunctive relief that will benefit Jason. Given these circumstances and Jason's representation to the Court, it appears all of Jason's requests for injunctive relief except the request that this Court require NISD provide Jason an accommodation for in-home instruction, are now moot and may be dismissed.

However, to the extent the possibility exists that Jason may change his mind and complete the mandatory remaining 48 hours of in-class instruction, and upon the possibility this opportunity still exists, the Court will also examine whether Jason exhausted his administrative remedies on these requests for injunctive relief. Further, the Court will examine whether Jason exhausted his administrative remedy on the only non-moot request for injunctive relief (presuming the opportunity for Jason to continue as a student of NISD still exists): this Court "enjoin NISD from refusing to provide Jason … instruction and services in the home until such time as [he is] able to return to school."

    b. **Exhaustion of Administrative Remedies**

At the TRO hearing, Jason and NISD represented to the Court that Jason initiated administrative proceedings under the Individuals with Disabilities Education Act (IDEA) but has not exhausted these administrative remedies. Because the IDEA proceedings are not concluded, NISD now argues Jason's requests for injunctive relief pursuant to Section 504 must be dismissed for failure to exhaust administrative remedies. *ECF No. 31*.

The issue whether Jason is required to exhaust administrative remedies implicates two distinct, but related, statutes: the IDEA, which provides states with federal funds in exchange for

providing a free and appropriate education (FAPE) to all students with recognized disabilities, and Section 504 of the Rehabilitation Act, the only federal law under which Jason seeks remedy, and which protects rights of all individuals with disabilities and bans discrimination by public entities, including schools. *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011); *see La Union del Pueblo Entero v. Abbott*, 770 F. Supp. 3d 974, 991 (W.D. Tex. 2025). Because the IDEA and Section 504 both provide overlapping substantive rights and remedies to students with disabilities, the IDEA requires a student-plaintiff with recognized disabilities who seeks judicial remedy against a school district under a federal law other than the IDEA to exhaust the IDEA's administrative procedures prior to filing suit when the requested relief is also available under the IDEA. 20 U.S.C. § 1415(l); *Luna Perez v. Sturgis Pub. Sch.*, 598 U.S. 142, 145-46 (2023); *Fry v. Napoleon Community Schools*, 580 U.S. 154, 161-168 (2017).

Accordingly, when a student with disabilities seeks remedy in a federal court under Section 504, or any other federal law, courts must discern whether the cause of action and facts supporting it rests on the denial of a FAPE (an IDEA claim) to determine whether administrative exhaustion under the IDEA is required as a prerequisite to the federal suit. *Luna Perez*, 598 U.S. at 145-46; *Fry*, 580 U.S. at 161-168. To make this determination, the Court must focus on the true substance, that is, the gravamen of the complaint, to examine the substance of the matters in dispute and relief sought, rather than the surface of the allegations. *Luna Perez*, 598 U.S. at 145-46; *Fry*, 580 U.S. at 161-168. To determine whether the gravamen of a complaint seeks relief available to a plaintiff under the IDEA, the court should consider two hypothetical questions: (1) "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school;" and (2) "could an adult at the school have pressed essentially the same grievance?" *Fry*, 580 U.S. at 171-72; *T. B. by & through Bell v. NW. Indep.*

7

*Sch. Dist.*, 980 F.3d 1047, 1052 (5th Cir. 2020). If both questions are answered affirmatively, the gravamen of the complaint is likely not seeking relief available under the IDEA. *Fry*, 580 U.S. at 171-72; *T. B.*, 980 F.3d at 1052. However, negative answers to these questions indicates the true substance of the student-plaintiff's allegations concerns denial of a FAPE for which the student-plaintiff is required to exhaust all administrative remedies under the IDEA. *Fry*, 580 U.S. at 171-72; *T. B.*, 980 F.3d at 1052.

Still, even after a court determines the gravamen of the asserted cause of action is based on the denial of a FAPE, the court must continue its inquiry to determine whether the remedy sought is also available under the IDEA. *Luna Perez*, 598 U.S. at 146-50. If the remedy sought is not available under the IDEA, exhaustion of the administrative proceeding is not required to proceed in federal court. *Id*. If the remedy sought in federal court is available under the IDEA, then exhaustion of IDEA administrative proceeding is required. *Id*.

**Application:**

On March 3, 2025, Jason filed this lawsuit, asserting only violation of Section 504 of the Rehabilitation Act and seeking only injunctive relief. *ECF No. 1, p. 7*. On March 17, 2025, Jason Huron filed a Request for a Special Education Due Process Hearing (the Request) with the Texas Education Agency. *See ECF 23-1*. In that Request, Jason recites verbatim the same facts and allegations as they appear in the Complaint in this case and then asserts NISD failed to comply with the Child Find provisions of the IDEA, failed to provide Jason with a FAPE, and failed to develop an appropriate Individualized Education Program (IEP) for Jason. *Compare ECF Nos. 1 and 23-1*. The Request seeks compensatory education services and seeks an order compelling NISD to

> undertake appropriate evaluations to determine [Jason's] Autism Spectrum Disorder and its educational impacts; provide compensatory services to Jason of a char-

acter and in an amount recommended by his private experts and evaluators; develop an appropriate IEP for Jason; reimburse Jason's parents for expenses incurred as a result of the failures described above; provide Jason with in-home instruction and services, unless and until his treating physicians and evaluators indicate he can return to in-person instruction and services; and; any relief the Hearing Officer deems appropriate or which is recommended by Jason's experts and private evaluators.

*ECF No. 23-1.*

### 1. Gravamen

Review of the substance of Jason's Complaint reveals his federal suit arises from his dissatisfaction with the educational services NISD provided. *See ECF No. 1*. Following the test outlined in *Fry*, the answer to the first question is negative: Jason could not pursue these claims for dissatisfaction with his educational services if the conduct had occurred in a public facility that was not a school. The answer to the second is also negative: any adult at the school could not raise the same type of grievance because only students may receive home-bound education services and the educational accommodations in Jason's 504 plan. Negative answers to both questions indicates Jason's Complaint concerns denial of a FAPE for which he is required to exhaust all administrative remedies under the IDEA. *See Fry*, 580 U.S. at 171-72.

Importantly, the fact that Jason did initiate an administrative proceeding under the IDEA shortly after filing suit weighs heavily in favor of a finding for required exhaustion of administrative remedies. *See T. B.*, 980 F.3d at 1052. The Complaint in federal court and the Request in the IDEA proceeding recite verbatim facts, chronology, and basis for the allegations. In both, Jason alleges NISD failed to identify him as a student eligible under the IDEA and further failed to provide him with a FAPE. *Compare ECF No. 1 and ECF No. 23-1*.

For these reasons, the Court concludes the gravamen of the Complaint is based on the denial of a FAPE.

### 2. Remedy Sought

With this indication, this Court must still determine whether the remedies Jason seeks for the alleged violations of Section 504 are also available under the IDEA. If not, exhaustion of the pending administrative proceeding is not required for him to proceed in this federal court. *See Luna Perez*, 598 U.S. at 146-50.

Jason seeks injunctive relief, only, requesting this Court require NISD to follow his 504 Plan, not retaliate against him for seeking adherence to his 504 Plan, require NISD train its staff to implement his 504 Plan, and require NISD provide him in-home instruction. All of these requests for injunctive remedy are available under the IDEA, and Jason does seek these remedies in the pending IDEA proceeding. Most importantly, Jason seeks, among other things, to require NISD develop an appropriate IEP for him and provide him with in-home instruction and services.

Because all the requested injunctive relief Jason seeks in this action, even those presumed to be moot, are available under the IDEA, Jason must exhaust his administrative remedies under the IDEA prior to seeking relief in this Court. *See Luna Perez*, 598 U.S. at 146-50. Therefore, the Court finds Jason's requests for injunctive relief are barred. *Id*. Finding exhaustion of IDEA administrative proceedings is a prerequisite to this suit, the Court will dismiss Jason's cause of action without prejudice to refiling. Due to this finding, the Court will not address the arguments presented in NISD's Motion to Dismiss for Failure to State a Claim as they pertain to Jason.

### 2. R.H by and through his next friend Tracy Myers

Jason and R.H. both assert a cause of action for violation of Section 504 and seek the same injunctive relief. Although the underlying facts supporting their individual causes of action are different, the factual bases and arguments are similar. Consequently, the Court finds R.H. was required to exhaust administrative remedies under the IDEA as a prerequisite to suit for the same reasons Jason was required to do so. However, this prerequisite to suit does not implicate this Court's jurisdiction, and NISD states it does not wish to assert this basis for dismissal of R.H.'s suit. For this reason, this Court will address the bases for dismissal NISD presents in its Motion.

To assert a cause of action under Section 504 for disability discrimination, a plaintiff must prove: (1) he is a qualified individual; (2) who was excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) the exclusion, denial of benefits, or discrimination is because of the recognized disability. *J.W. v. Paley*, 81 F.4th at 449; T.O. v. Fort Bend Indep. Sch. Dist., 2 F.4th 407, 417 (5th Cir. 2021). To show the causation element, Section 504 requires the plaintiff's disability be the sole reason for the exclusion or denial of benefits. *J.W. v. Paley*, 81 F.4th 440, 449 (5th Cir. 2023), cert. denied, 144 S. Ct. 2658 (2024).

The heart of a cause of action for violation of Section 504 is whether the school district intentionally discriminated against a student by denying benefits due to the student's disability, alone. Until recently, proof of intentional discrimination in the education context also required a heightened showing of bad faith or gross misjudgment. *See e.g.*, *D.A. ex rel. Latasha A. v. Houst. Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir. 2010); *Est. of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 992 (5th Cir. 2014); *Estrada v. S.A. Indep. Sch. Dist.*, 575 Fed. App'x 541, 545 (5th Cir. 2014). However, the Supreme Court recently dispelled this required heightened show-

11

ing of bad faith or gross misjudgment, holding the "ADA and Rehabilitation Act claims based on educational services [are] subject to the same standards that apply in other disability discrimination contexts." *A.J.T. by & Through A.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 605 U.S. ——, 145 S.Ct. 1647, 1655, 1657 (2025); abrogating *Monahan v. Nebraska*, 687 F.2d 1164 (8th Cir. 1982), which created the bad faith or gross misjudgment rule applied in Fifth Circuit caselaw, and abrogating *D.A. ex rel. Latasha A. v. Houst. Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir. 2010); *Est. of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 992 (5th Cir. 2014); *Estrada v. S.A. Indep. Sch. Dist.*, 575 Fed. App'x 541, 545 (5th Cir. 2014). Thus, following *A.J.T. by & Through A.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, a student-plaintiff must allege and show only intentional discrimination based solely upon the student's established and known disability, as is required in other discrimination cases outside the education context. *A.J.T. by & Through A.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 145 S.Ct. 1647, 1655, 1657.

All of NISD's arguments for dismissal of R.H.'s case focus on R.H.'s failure to assert and inability to show intentional discrimination that amounted to bad faith or gross misjudgment. *See ECF No. 10, pp. 3-4*. Because this standard of conduct is no longer required to assert or establish a cause of action for violation of Section 504 in the education context, NISD's arguments for dismissal are now inapposite. For this reason, NISD's Motion to Dismiss R.H.'s cause of action must be denied. However, this denial is not a substantive ruling on the validity of R.H.'s assertion of a violation of Section 504 based upon NISD's failure to follow R.H.'s 504 Plan and seeking to require NISD to provide R.H. train staff to implement R.H.'s 504 Plan and require NISD provide in-home instruction to R.H.


ing of bad faith or gross misjudgment, holding the "ADA and Rehabilitation Act claims based on educational services [are] subject to the same standards that apply in other disability discrimination contexts." *A.J.T. by & Through A.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 605 U.S. ——, 145 S.Ct. 1647, 1655, 1657 (2025); abrogating *Monahan v. Nebraska*, 687 F.2d 1164 (8th Cir. 1982), which created the bad faith or gross misjudgment rule applied in Fifth Circuit caselaw, and abrogating *D.A. ex rel. Latasha A. v. Houst. Indep. Sch. Dist.*, 629 F.3d 450, 454 (5th Cir. 2010); *Est. of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 992 (5th Cir. 2014); *Estrada v. S.A. Indep. Sch. Dist.*, 575 Fed. App'x 541, 545 (5th Cir. 2014). Thus, following *A.J.T. by & Through A.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, a student-plaintiff must allege and show only intentional discrimination based solely upon the student's established and known disability, as is required in other discrimination cases outside the education context. *A.J.T. by & Through A.T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 145 S.Ct. 1647, 1655, 1657.

All of NISD's arguments for dismissal of R.H.'s case focus on R.H.'s failure to assert and inability to show intentional discrimination that amounted to bad faith or gross misjudgment. *See ECF No. 10, pp. 3-4*. Because this standard of conduct is no longer required to assert or establish a cause of action for violation of Section 504 in the education context, NISD's arguments for dismissal are now inapposite. For this reason, NISD's Motion to Dismiss R.H.'s cause of action must be denied. However, this denial is not a substantive ruling on the validity of R.H.'s assertion of a violation of Section 504 based upon NISD's failure to follow R.H.'s 504 Plan and seeking to require NISD to provide R.H. train staff to implement R.H.'s 504 Plan and require NISD provide in-home instruction to R.H.

### 3. Lee Myers

Lee Myers asserts a cause of action for violation of 42 U.S.C. § 1983 alleging NISD terminated his employment in retaliation for his wife's actions in advocating for Jason and R.H. *ECF No 1., pars. 29-33.* By terminating his employment, Myers alleges NISD violated his right to association protected by the First and Fourteenth Amendments. *Id*. Pertaining to this cause of action, Myers alleges:

> [a]t the termination hearing it became clear that, although NISD manufactured various alleged bases to justify the termination, these supposed bases were designed entirely to disguise the actual motivation for the termination—Mr. Myers' relationship with Tracy Myers, which provided a convenient target for NISD's retaliatory activities in the face of Tracy Myers' advocacy for her sons. NISD went so far as to publish statements with the media falsely claiming that the termination was based on threats made by Mr. Myers, despite the fact that hearing transcripts demonstrate the true motivations for the termination.

*ECF No 1., par. 19*. Myers alleges NISD's actions: "reflect a policy of NISD's Board to adopt wholesale impermissible termination recommendations, even when issued by those driven by illegitimate motivations and even when in direct contravention of an employee's constitutional and statutory rights. The Board itself is a policymaker for NISD." *ECF No. 1, par. 31*. As remedy, Myers seeks injunctive relief of reinstatement to his previous position. *Id. at p. 9*.

Section 1983 makes liable every person who, under color of state law, violates federal constitutional rights. The First Amendment protects an individual's "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984). These associational rights take two forms: (1) "intimate human relationships," such as marriage and family; and (2) groups, whose members "regularly engage in a variety of civic, charitable, lobbying, fundraising, and other activities." *Id*. at 618, 627. While a municipal entity such as a school district is a "person," under § 1983, it "cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v.*

*Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 622–23 (5th Cir. 2018). Rather, the school district itself must have caused the violation of § 1983. *Monell,* 436 U.S. at 690 (1978); *Littell*, 894 F.3d at 622–23.

Thus, to state a § 1983 cause of action against a school district for violation of a constitutional right, the plaintiff must allege sufficient factual content to permit the reasonable inference that: (1) a constitutional violation occurred and (2) an official policy attributable to the school district's policymakers (3) was the moving force behind the constitutional violation. *Littell*, 894 F.3d at 622–23; *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 412 (5th Cir. 2015).

### A. Whether NISD Acted Under an Official Policy
### B. Whether the Official Policy was the Moving Force Behind the Constitutional Violation

Lee Myers's argument is not that NISD has a written policy that is facially unconstitutional. Rather, Myers alleges the actionable underlying conduct is NISD's one-time act of adopting "wholesale impermissible termination recommendations, even when issued by those driven by illegitimate motivations" in its decision to terminate his employment.

An "official policy or custom" of a school district is: (1) "a policy statement, ordinance, regulation or decision that is officially adopted and promulgated by the district, or by an official to whom the district has delegated policy-making authority;" or (2) "a persistent, widespread practice of district officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents district policy." *Eugene v. Alief Indep. Sch. Dist.*, 65 F.3d 1299, 1304 (5th Cir. 1995) (internal quotations and citations omitted). Under either avenue, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it

must contain specific facts." *Ordonye v. Clement*, No. CV 24-2084, 2025 WL 371385, at *5 (E.D. La. Feb. 3, 2025)(quoting *Spiller v. City of Tex. City*, 130 F.3d 162, 167 (5th Cir. 1997)).

A single decision may constitute an official policy upon which a § 1983 cause of action rests only in a rare circumstance when the official or entity possessing final policymaking authority for the challenged action performs the specific act. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019); *Ordonye*, 2025 WL 371385, at *5. The single incident exception "is a narrow one that [the Fifth Circuit has] been reluctant to expand." *Ordonye*, 2025 WL 371385, at *5-6. Unless the actor is the final policymaker for the public entity, "[a]llegations of an isolated incident are not sufficient." *Id*. (quoting *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)). In addition, the plaintiff must allege sufficient facts to establish the action by the final policymaker was the moving force behind the constitutional violation because it was intentional and malicious and/or committed with deliberate indifference. *Ordonye*, 2025 WL 371385, at *5-6.

Because Myers alleges the single act by NISD constitutes a policy for which NISD may be held liable, he must allege facts that, if accepted as true, will establish the single incident exception to the general requirement of showing a persistent, widespread practice. To support his single-incident exception argument, Myers alleges he received a hearing before a Hearing Examiner appointed by the Texas Education Agency. After receiving testimony and evidence, the Hearing Examiner issued Findings of Fact, Conclusions of Law, and a Recommendation that his employment contract be terminated for good cause. *ECF. No. 1; Ex. A*. Myers alleged no facts pertaining to the issue whether the Hearing Examiner appointed by TEA acted with any retaliatory motive. Myers alleges the single act by the NISD Board of Trustees was its adoption of the Hearing Examiner's recommendation, which amounted to "a policy of NISD's Board to adopt

15

wholesale impermissible termination recommendations, even when issued by those driven by illegitimate motivations and even when in direct contravention of an employee's constitutional and statutory rights." *ECF. No. 1*.

In pleading this cause of action, Myers first fails to state sufficient specific facts to support any assertion of a single act which may be attributed to be a policy or custom. Myers states only in conclusory fashion that the NISD Board adopted "impermissible termination recommendations even when issued by those driven by illegitimate motivations." This statement does not provide sufficient factual detail or description of any single act or policy and its relationship to his termination. For this reason, Myers fails to satisfy the second prong to show a policy or custom and its relationship to the underlying constitutional violation. Therefore, this cause of action may be dismissed on this basis, alone.

Even if Myers could satisfy the second prong, he also fails to assert enough facts to meet his burden under the third prong, that is, pleading moving-force causation. To adequately plead the third prong under the single-incident exception, the plaintiff must allege the constitutional violation was a highly predictable consequence of the defendant policymaker's conduct, such that the policymaker was in "complete disregard of 'the risk that a violation of a particular constitutional ... right [would] follow the decision.'" *Bluitt v. Houston Independent School Dist.*, 236 F.Supp.2d 703, 732 (S.D.Tex. 2002). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Myers fails to satisfy this burden by stating only that NISD's termination of his employment was based upon recommendations "issued by those driven by illegitimate motivations and even when in direct contravention of an employee's constitutional and statutory rights." This

statement is conclusory, and Myers pleads no facts to support these barebones allegations. As a result, Myers fails to adequately allege the NISD Board held the culpability necessary to establish moving-force causation.

For these reasons, Myers fails to state a cognizable cause of action against NISD, and this cause of action will be dismissed. *See Ordonye*, 2025 WL 371385, at *7–8.

The Court notes NISD followed the Court's procedure outlined in the Standing Order prior to filing this Motion to Dismiss. *See ECF No. 3*. Accordingly, NISD provided Myers notice of these pleading deficiencies and the basis for this Motion to Dismiss, and this Court provided Myers the opportunity to amend his complaint to fully address the arguments made in NISD's Motion to Dismiss. Because the Court provided Myers the opportunity to amend the complaint, and he did not, Myers will not be provided another opportunity, and "[o]n this ground alone, the *Monell* claims can be dismissed as waived." *Ordonye*, 2025 WL 371385, at *6.

## CONCLUSION

For the reasons stated, NISD'S Motion to Dismiss is GRANTED IN PART AND DENIED IN PART. The cause of action asserted by Jason Huron, individually, is DISMISSED WITHOUT PREJUDICE. The cause of action asserted by Lee Myers, individually, is DISMISSED WITH PREJUDICE. The cause of action asserted by R.H. by and through Tracy Myers remains.

It is so ORDERED.
SIGNED this 6th day of August, 2025.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE